## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

MALLERIE BADGETT, a minor by and
through her father and next friend,
RANDALL BADGETT,

       **Plaintiff,**

**v.**

**ALABAMA HIGH SCHOOL ATHLETIC
ASSOCIATION,** *et al.*,

       **Defendants.**

**NO. 2:07-CV-00572-KOB**

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Complaint and Motion for Preliminary Injunctive Relief. (Docs. 1-2). The court has thoroughly reviewed and considered the briefs, evidentiary submissions, and arguments presented by both parties. For the reasons stated below, the court finds that Plaintiff's motion is DENIED and that judgment is due to be entered in favor of all Defendants.

## PROCEDURAL HISTORY

Plaintiff Mallerie Badgett filed suit on March 30, 2007, against the named Defendants alleging violations of (1) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; (3) and 42 U.S.C. § 1983.[1] Among other relief, Plaintiff seeks a preliminary injunction ordering

---

[1] Miss Badgett states that "Defendants' violation of the Rehabilitation Act as set forth in Plaintiff's First Claim for Relief establishes a cause of action under 42 U.S.C. § 1983 . . . ." Complaint at ¶ 77. Because the § 1983 claim is based on an alleged violation of the Rehabilitation Act, the court will not separately address that claim.

Defendants to provide certain affirmative relief and a declaratory judgment that Defendants' actions violated these statutes.[2]

On April 5, 2007, the court entered an order setting forth a briefing schedule on Plainitff's request for a preliminary injunction and advancing a hearing on the merits. (*See* Doc. 5). The Parties were directed to file all evidence, affidavits, and argument prior to the hearing. (*Id.*). A hearing was scheduled for April 17, 2007, at which time both parties would be allowed to present argument and cross-examine witnesses. (*Id.*). Prior to the commencement of the hearing, however, the parties advised the court that no additional evidence would be presented and that the parties would rest on their prior filings. The case is now ripe for decision.

## FACTS

Plaintiff Mallerie Badgett is a student at Oxford High School in Calhoun County, Alabama. Miss Badgett has cerebral palsy and uses a wheelchair for mobility. Miss Badgett, by all accounts, is a gifted athlete. Miss Badgett is an active member of Oxford High's track and field team and holds nine Junior National Records for girls with cerebral palsy.

Defendant Alabama High School Athletic Association ("AHSAA") is a private agency comprised of both public and private schools in the State of Alabama, including Oxford High. Current membership involves 787 schools with more than 100,000 student athletes participating in the various sports programs selected by the member schools.

One of the interscholastic sports sanctioned by the AHSAA is track and field. Traditionally, this sport has consisted of running races of different lengths, called "track" events (*e.g.*, 100-meter dash), and contests in jumping and throwing (*e.g.*, long jump), called "field" events. Scoring is based on team points awarded to place winners according to the order in

---

[2] Miss Badgett does not seek monetary damages. *See*, *e.g.*, Complaint at ¶ 34.

which competitors finish a given event.  The team winner is determined by totaling the points won by the individuals and relay teams representing the school.  The qualifying meets to determine which student athletes will participate in the state track and field championship will be held on April 27 and April 28, 2007.  The state track and field championship will be held on May 4 and 5, 2007.

In January 2006, the AHSAA began efforts to determine how to encourage and accommodate the participation of disabled student athletes in the sports programs.  Those efforts included contacting the American Association of Adapted Sports Programs ("AAASP"), a Georgia-based nonprofit organization that builds interscholastic sports leagues for students with physical disabilities or visual impairments.  In July 2006, the AHSAA voted to partner with AAASP to assist it with implementing athletic programming for student athletes with physical disabilities.

Prior to the commencement of the 2007 track and field season, Miss Badgett and Oxford High contacted the AHSAA concerning her participation  in track and field events.  The AHSAA decided to implement the first phase of its new program ("Phase I") in response to Miss Badgett's request.  Under Phase I, as envisioned by the AHSAA, wheelchair athletes would compete in a wheelchair division separate from the able-bodied division.  Their times in each event would be recorded at each meet.  The wheelchair athletes with the eight fastest times in each event throughout the entire track and field season would automatically advance to the state championship without having to compete in the section qualifying meet.  Once in the state

meet, the wheelchair athletes representing their respective school teams would compete for the state championship in the wheelchair division.[3]

For the 2007 track and field season, Miss Badgett is and has been the only competitor in the wheelchair division in the entire state. The AHSAA plans, however, to allow Miss Badgett to participate in her section qualifying meet should she so desire. Moreover, although the AHSAA originally limited Miss Badgett to certain specified events, the AHSAA has decided, in response to Miss Badgett's specific request, to allow her to compete in four track and field events *of her choosing* in the wheelchair division during the state track and field championship. If she finishes first in any of those events, she will be awarded a medal identical to other student-athletes who win the individual state championships. In addition, Oxford High will win a state championship trophy for the wheelchair division identical to the state championship trophy awarded to other member schools that win each of the able-bodied divisions.

Miss Badgett, however, does not want to compete in a separate wheelchair division because, among other reasons, she believes that competing alone makes her an "exhibition" rather than a part of her team. Miss Badgett is also concerned that competing in a separate wheelchair division will affect her ability to receive college scholarships and other benefits. Instead of competing in a separate wheelchair division, Miss Badgett desires to participate alongside able-bodied athletes, and she desires that her individual points be added to Oxford High's team point total in the able-bodied track and field division. The primary controversy

---

[3] The court's understanding is that the AHSAA has voluntarily agreed that by June 1, 2007, it will adopt, through its Central Board of Control, formal policies and procedures governing the participation of disabled student athletes in high school track and field. Therefore, to the extent Miss Badgett has raised any issue regarding no "formal" implementation document for the Phase I program, the court need not address that issue.

4

before the court is whether the ADA and the Rehabilitation Act require Defendants to accommodate Miss Badgett's requests.

## ANALYSIS

Both the ADA and the Rehabilitation Act generally prohibit discrimination against individuals with disabilities.[4]  The ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Similarly, the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).[5]

To state a claim under Title II of the ADA, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participating in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007).  *See also Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001).  The elements of a *prima facie* case under the Rehabilitation Act are essentially the same

---

[4]  Defendants do not dispute that Miss Badgett has a "disability" under the ADA and the Rehabilitation Act.

[5]  The Rehabilitation Act and the ADA utilize similar statutory language and are generally construed similarly. *See* 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides. . . ."); 42 U.S.C. § 12134(b) (directing ADA regulations to be consistent with Rehabilitation Act regulations); *see also Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

except for the additional requirement that the plaintiff must show that the defendant is a recipient of federal funds. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act.").[6] After reviewing the evidence and arguments presented, the court concludes that Miss Badgett's claims must fail.

## I.    Is Miss Badgett a "Qualified Individual With a Disability?"

Defendants contend that Miss Badgett is not a "qualified individual with a disability" under the ADA and the Rehabilitation Act.  The ADA defines a "qualified individual with a disability" in part as "an individual with a disability who, with or without reasonable modifications . . . *meets the essential eligibility requirements*" of the program at issue.  42 U.S.C. § 12131(2) (emphasis supplied).  While the Rehabilitation Act contains no statutory definition of the term "qualified," the case law decided under the Act is to similar effect.  *See, e.g.*, *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979) (defining "otherwise qualified" individual as "one who is able to meet all of a program's requirements in spite of his [disability]").

Here, Defendants contend that the essential eligibility requirements of able-bodied track and field include specific physical qualifications, such as the ability to run and jump, which Miss Badgett does not possess and that cannot be achieved with a reasonable modification.  The court notes that "[l]egitimate physical qualifications may in fact be essential to participation in particular programs." *Knapp v. Northwestern University*, 101 F.3d 473, 482-83 (7th Cir. 1996) (finding student with heart condition was not "otherwise qualified" to participate in

---

[6] Defendants contend that they are not subject to the Rehabilitation Act because they are not recipients of federal funds.  As will be discussed more fully below, the court concludes that Defendants' actions do not constitute a violation of the Rehabilitation Act.  Therefore, the court assumes, without deciding, that Defendants are subject to the Rehabilitation Act.  Defendants have not contended that they are not subject to Title II of the ADA.

intercollegiate basketball despite the fact that he had a basketball scholarship and by all accounts could run, jump, throw, and shoot). *See also Doherty v. Southern College of Optometry*, 862 F.2d 570, 575 (6th Cir. 1988) (noting that "nothing in the language or history of § 504 reflects an intention to limit the freedom of an educational institution to require reasonable physical qualifications for admission to a clinical training program.").

Neither party has cited to any authority, however, specifically addressing whether legitimate physical requirements are essential to participation in able-bodied track and field. A determination of whether Miss Badgett could carry her burden of proof on the "qualified individual" issue is not, moreover, essential to the resolution of this matter, as discussed below. Consequently, the court will not address the issue.

## II.     Defendants Have Met Their Obligations Under the ADA and the Rehabilitation Act.

Rather, the court finds that to the extent Defendants were obligated to modify the track and field program, they have met that obligation by establishing a separate wheelchair division for track and field.  Athletes who compete in the wheelchair division will earn individual points, establish state records, and earn state championship medals for wheelchair track and field competition.  Schools will also be eligible to win state championships in the wheelchair division, including a trophy identical to those awarded to schools that win championships in the able-bodied divisions.  The court finds this modification to be a reasonable one.[7]

## III.    Miss Badgett's Requested Modification Is Not Reasonable.

As noted above, Miss Badgett wants the AHSAA to modify the track and field program by (1) allowing her to race alongside able-bodied athletes, and (2) allowing her individual points

---

[7] Notably, the Rehabilitation Act regulations specifically authorize the implementation of "separate or different" athletic or physical education programs for students with disabilities.  *See* 34 C.F.R. § 104.37(c)(2).

earned to count toward her team's point total in the able-bodied track and field division.  As a threshold matter, the court notes that neither the ADA nor the Rehabilitation Act requires a public entity to adopt the "best" modification or the modification requested by a person with a disability; rather, these statutes require only a *reasonable* modification.  *See, e.g.*, *Knapp v. Northwestern,* 101 F.3d 473, 484-85 (7th Cir. 1996) ("[W]e are not saying Northwestern's decision necessarily is the right decision.  We say only that it is not an illegal one under the Rehabilitation Act. . . . [I]f substantial evidence supports the decision-maker . . . that decision must be respected."); *Pahulu v. University of Kansas*, 897 F. Supp. 1387, 1394 (D. Kan. 1995) ("The court finds that the conclusion of the KU physicians, although conservative, is reasonable and rational . . . [and] the court is unwilling to substitute its judgment.").  As noted above, the plan implemented by the AHSAA is reasonable.

Moreover, the court finds that the modifications requested by Miss Badgett are not reasonable.  In deciding what is reasonable in the context of a high school athletic program, considering both competitive and safety concerns is appropriate.  *See, e.g.*, *Pottgen v. Missouri State High School Activities Association*, 40 F.3d 926, 929 (8th Cir. 1994) ("An age limit helps reduce the competitive advantage flowing to teams using older athletes [and] protects younger athletes from harm . . . . These purposes are of immense importance in any interscholastic sports program."); *Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1035 (6th Cir. 1995) (same).  Here, these two concerns militate against the reasonableness of Miss Badgett's requested modifications.

### A.     Miss Badgett's Request to Participate Alongside Able-bodied Athletes is Not Reasonable.

Regarding Miss Badgett's request to participate alongside able-bodied students, the court finds that Defendants have presented substantial evidence that adopting her request would raise

legitimate competitive, fairness, and administrative concerns, such as bumping an able-bodied athlete who qualified for the state championship or needing to create a third heat at the state championship. The AHSAA can and must be allowed to take such considerations into account in setting the rules of competition, particularly mid-season and on the eve of the state championship. *See, e.g.*, *Olmstead v. Zimring*, 527 U.S. 581 (1999) (ADA did not require state to move mentally disabled patients who filed lawsuit to community treatment centers ahead of other qualified patients on waiting list; ADA's "fundamental alteration" clause afforded state leeway to allocate finite resources and administer programs "even handedly").

More importantly, Defendants have presented substantial evidence that adopting Miss Badgett's request would raise legitimate safety concerns that are inherent in having able-bodied athletes and wheelchair athletes compete in mixed heats. The AHSAA's conclusions regarding these legitimate safety issues should be respected if reasonable and supported by the available evidence. *See, e.g.*, *Knapp*, 101 F.3d at 485 ("Simply put, all universities need not evaluate risk the same way. . . . [I]f substantial evidence supports the decision-maker . . . that decision must be respected."); *Pahulu*, 897 F. Supp. at 1394 ("The court finds that the conclusion of the KU physicians, although conservative, is reasonable and rational . . . . for which the court is unwilling to substitute its judgment."); *cf. Olmstead*, 527 U.S. at 602 ("[T]he State generally may rely on the reasonable assessments of its own professionals in determining whether an individual 'meets the essential eligibility requirements' for habilitation in a community-based program.").

By contrast, a reasonable modification in the track and field context might include using a visual signal in addition to the traditional starting pistol, so that a hearing-impaired runner

would know when to begin the race.  Such an accommodation would permit athletes with disabilities *access* to the sport, without changing the rules of the game.

While Miss Badgett claims, with some evidentiary support, that she can participate safely alongside able-bodied athletes, the court agrees that the AHSAA must be allowed to adopt a longer-term view.  Adopting Miss Badgett's proposed modification would in future competitions require the AHSAA to conduct a detailed, individualized evaluation of every wheelchair athlete's skill and ability to race safely with able-bodied runners.  Such evaluations make this approach administratively unworkable and unreasonable.  *See, e.g.*, *Sandison*, 64 F.3d at 1035 ("It is plainly an undue burden to require high school coaches and hired physicians to determine whether . . . a student's age [is] an unfair competitive advantage."); *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 462 (6th Cir. 1997) (en banc) ("Moreover, requiring a waiver [of an eight-semester rule] would impose an immense financial and administrative burden on the MHSAA, by forcing it to make near impossible determinations about a particular student's physical and athletic maturity.").

Notably, the Defendants presented substantial evidence that separate wheelchair divisions and/or staggered starting times are the norm in road races and national or international track and field competitions.  This evidence bolsters a finding that the separate division appropriately addresses the concerns of wheelchair athletes.

### B.    Miss Badgett's Request to Have Her Individual Points Count Toward Her Team's Total is Not Reasonable.

Regarding her request to have her individual points count toward her team's total in the able-bodied track and field division, to allow Miss Badgett's school team to be awarded points in the able-bodied division based on her participation in certain events when no other school in the entire state has a wheelchair athlete would be unfair and therefore unreasonable.  Again,

the AHSAA must be allowed to take such fairness considerations into account in setting the rules for scoring of track and field events. *See Olmstead*, 527 U.S. at 605 (ADA afforded state leeway to allocate finite resources and administer programs "even handedly").

Moreover, Miss Badgett's requested modifications regarding scoring would fundamentally alter the nature of the track and field events in the able-bodied divisions. The regulations implementing Title II of the ADA provide:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.*

28 C.F.R. § 35.130(b)(7) (2006) (emphasis supplied). *See also Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (11th Cir. 2007) ("The ADA's 'reasonable modification' principle, however, does not require a public entity to employ any and all means . . . but only to make 'reasonable modifications' that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden.") (*citing Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004)); *Ass'n for Disabled Americans*, 405 F.3d at 959 (same); *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17 (1987) (noting that under the Rehabilitation Act an "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee . . . or requires 'a fundamental alteration in the nature of [the] program'") (citations omitted).

Although the text of the ADA suggests that a particular accommodation could be "reasonable," yet "fundamentally alter the nature of the service, program, or activity," courts generally have concluded that if a requested accommodation violates the fundamental alteration principle, it is by definition not reasonable. *See, e.g., PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001).

11

As noted above, the state championship is awarded to teams with the highest number of points accumulated. Those points, however, are awarded based on running times, jumping heights, etc. By asking for her individual points to count toward her team's total in the able-bodied track and field division, Miss Badgett is asking the court to equate wheeling with running and jumping despite the fact that wheeling is a distinct discipline. *See Bd. of Educ. of Carlstadt-East Rutherford Reg'l High Sch. Dist., Bergen County v. New Jersey State Interscholastic Athletic Ass'n*, 94 N.J.A.R.2d (EDU) 563, 1994 WL 702330, at *16 (N.J. Adm. June 21, 1994) ("The 'essential nature' of racing a wheelchair is different from the 'essential nature' of running. They are distinctly different athletic activities."). Stated differently, Miss Badgett wants this court to find that running and jumping are not required to receive team points. To eliminate running and jumping as an essential requirement to participate in able-bodied track and field events, however, would "fundamentally alter the nature of the . . . activity." *Cf. PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001) (noting that even seemingly minor modifications to the rules of the game of golf, such as "changing the diameter of the hole from three to six inches," would fundamentally alter the game, "even if [the modification] affected all competitors equally."). Because the modifications requested by Miss Badgett would "fundamentally alter" the nature of the track and field program, they are not required by the ADA or the Rehabilitation Act. *See, e.g., McPherson*, 119 F.3d at 462 ("Requiring a waiver of the eight-semester rule . . . would work a fundamental alteration in Michigan high school sports programs."); *Sandison*, 64 F.3d at 1035 (waiver of maximum age limit for high school athletics constitute a fundamental alteration in sports program); *Pottgen*, 40 F.3d at 930 (same).

The court notes with approval that, prior to the scheduled hearing in this matter, the parties voluntarily reached a separate agreement to count Miss Badgett's individual points in

a "combined division" along the lines of the program utilized in the State of Washington rather than in a separate wheelchair division.  The court further notes that the adoption of Washington's "combined division" program for the remainder of the 2007 track and field season is not binding on the Defendants for future track and field seasons.  Rather, both the combined division and the separate wheelchair division originally adopted by Defendants are reasonable modifications, and Defendants remain free to utilize either approach in the future.

## CONCLUSION

In light of the foregoing, the court finds no violation of the Rehabilitation Act of 1973 or Title II of the Americans with Disabilities Act.  To the extent the Defendants were required to extend a reasonable modification to Miss Badgett, they have met that obligation by establishing the separate wheelchair division for track and field.

In reaching this decision, the court recognizes and commends Miss Badgett for her dedication and accomplishments under difficult circumstances, and compliments her parents and school for their support of her efforts.  At the same time, the court applauds the efforts of the AHSAA in taking steps to make high school athletic events more available to Alabama's disabled student athletes.  Miss Badgett continues to blaze a trail for other disabled student athletes to follow, and the court is confident that the AHSAA will move forward with its efforts to develop a comprehensive program for disabled student athletes.

A separate order will be entered contemporaneously with this memorandum opinion..

DATED this 3rd day of May, 2007.

_Karon O. Bowdre_

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE